## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SILVERADO CAPITAL LLC,
a California limited liability company,

      Plaintiff,

v.                                  Case No.:   3:23-cv-00556

WATER STREET CAPITAL, INC.,
a Florida corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, SILVERADO CAPITAL LLC ("Silverado Capital") sues Defendant, WATER STREET CAPITAL, INC. ("Water Street Capital") and states as follows:

## INTRODUCTION

1.    In October 2020, Water Street Capital, a billion-dollar investment firm located in Jacksonville, Florida, agreed to pay Silverado Capital, a small investment firm founded by Jeffrey "Jeff" Enquist, 10% of the net profits made on research and consulting advice provided to Water Street Capital concerning two electric vehicle companies: Workhorse Group ("WKHS") and Lordstown Motors ("RIDE"). Silverado Capital compiled research and analysis suggesting both companies may have been engaging in misconduct to artificially inflate

the value of their publicly traded stocks. It agreed to provide consulting services to Water Street Capital regarding shorting the stock—essentially betting on the stock's price to fall. The analysis and research proved correct. Both companies' stock fell more than 70% in 2021. And as of the filing of this lawsuit, the companies' stock has fallen 95%-99% from their November 2020 value.

2.　　Silverado Capital's consulting services were extremely lucrative for Water Street Capital and its investors. The company has made more than $18 million betting against both stocks.

3.　　By Water Street Capital's design, the parties' October 28, 2020 contract was originally a "handshake agreement." Davis Berg, who had known Mr. Enquist for more than five years, repeatedly assured Mr. Enquist that his father, Gilchrist Berg, one of the most recognizable leaders of the Northeast Florida investment industry, was a "man of his word" and that Water Street Capital would honor its agreement. In reliance on those many assurances, Silverado Capital shared its research and analysis and provided consulting services to Water Street Capital regarding investment in both companies.

4.　　Although the agreement was originally oral, Water Street Capital confirmed the terms of the contract in writing on multiple occasions. These written communications include confirmation by Davis Berg via Signal message that Silverado Capital would be paid 10% of the net profits from each

investment. They include email communications from Davis Berg reiterating the parties' agreement was to pay Silverado Capital 10% of the net profits—also known as 50% of the "carry"—and nothing more. They also include payment of an invoice sent to and paid by Gilchrist Berg that explicitly stated the invoice represented a progress payment towards the agreed 10% net profits contract. By contrast, there is not a single written communication over the course of Silverado Capital's performance of the contract where Water Street Capital ever disputed or questioned the terms of the parties' agreement.

5.     Yet, in late January 2022, after Water Street Capital had made more than $18 million thanks to Silverado Capital's research and consulting services, it reneged on its agreement, informed Silverado Capital that no further payments would be made, and the company stopped responding to his communications altogether.  Contrary to the oral and written communications between the parties, Gilchrist Berg took the position that the parties' agreement is and always had been that Water Street Capital would pay what Gilchrist Berg determined was "fair" for the advice provided.

6.     In the end, Gilchrist Berg, on behalf of Water Street Capital, unilaterally decided that "what was fair" was a tiny fraction of the 10% net profits that was promised. While Water Street Capital has now made more than $18 million from its WKHS and RIDE investments based on Silverado Capital's advice, it has paid Silverado Capital only $350,000.

## PARTIES, JURISDICTION, AND VENUE

7.     Silverado Capital is a limited liability company formed under Delaware law with its principal place of business in California.

8.     Jeff Enquist is Silverado Capital's founder and sole member. Mr. Enquist is a citizen of California.

9.     By virtue of Mr. Enquist's California citizenship, Silverado Capital is a citizen of California.

10.    Water Street Capital is incorporated in Florida and maintains its principal place of business in Florida. Therefore, Water Street Capital is a citizen of Florida.

11.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because the Parties are diverse and the matter in controversy exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this District under 28 U.S.C. § 1391 because Water Street Capital resides in this District and a substantial part of the events or omissions giving rise to Silverado Capital's claims occurred in this District.

## BACKGROUND

13.    Silverado Capital was founded in 2014 by Mr. Enquist, a graduate of Stanford University with a bachelor's degree with honors in Economics and a master's degree in Business Administration from Stanford Graduate School

of Business. Mr. Enquist has extensive experience in investment management, hedge fund management and investment analysis. Mr. Enquist has more than 17 years of experience in the investment industry based on his roles with Dodge & Cox, Morgan Stanley, Ascend Capital, and Silverado Capital.

14.     Silverado Capital is an investment consulting firm that specializes in deep investigative research into publicly traded companies seeking to artificially inflate their stock price. Over the course of many months and sometimes years, Silverado Capital utilizes publicly available information collected through extensive research and investigation to uncover false and misleading information provided by such companies to the investing public. In other words, Silverado Capital specializes in identifying and ultimately disclosing to the market suspicious activity of publicly traded companies seeking to artificially inflate their stock price.

15.     In connection with this work, Silverado Capital sometimes shares information with the Securities and Exchange Commission and Department of Justice, which in turn investigates and, depending on the circumstances, prosecutes companies and individuals for a variety of misconduct, including violations of SEC regulations and other federal laws.

16.     Silverado Capital also regularly provides consulting services to investment firms like Water Street Capital. These firms contract with Silverado Capital for advice regarding opportunities to short over-valued stock

in anticipation of it losing value when the false and misleading representations are disclosed to the general public.

17.   Water Street Capital is a private investment firm based in Jacksonville, Florida that was founded in 1987 by Gilchrist Berg, a renowned and savvy investor.

18.   Upon information and belief, Gilchrist Berg graduated from Princeton University in 1973 with an economics degree and started his career in real estate finance with Barnett Winston Company. Then he spent nearly a decade as a vice president at Kidder Peabody, a more than 100-year-old securities firm, before founding Water Street Capital.

19.   Upon information and belief, Water Street Capital has more than $1.6 billion in assets under management. In fact, under Gilchrist Berg's leadership, Water Street Capital is now arguably one of the most successful and well-known private investment firm in northeast Florida and one of the most successful and well-known firms in the state of Florida.

20.   Mr. Enquist had a friendly relationship with Davis Berg, a member of the Water Street Capital investment team and son of founder Gilchrist Berg, since 2014. Over the years, Mr. Enquist and Davis Berg discussed their investment ideas and potential opportunities to work together.

21.    On October 28, 2020, Davis Berg reached out to Mr. Enquist to discuss Water Street Capital contracting with Silverado Capital regarding short-focused investment opportunities.

22.    Davis Berg, as a principal and an agent of Water Street Capital, orally agreed that Water Street Capital would Silverado Capital 10% of the net profits on Water Street Capital's investment in WKHS and RIDE made based on Silverado Capital's analysis and consulting services.

23.    The agreement that Silverado Capital would be paid 10% of Water Street Capital's net profits was half of the 20% of net profits arrangement Silverado Capital typically receives for its services.

24.    Silverado Capital agreed to be paid 10% of net profits after Davis Berg explained that Water Street Capital's own profits, its "carry" (the amount the investment firm retains on net profits from the fund investments) is only 20% in total. Thus, if Silverado Capital received its typical 20% fee, Water Street Capital would make zero profit from the investments, no matter how much profit was made generally. By agreeing to pay Silverado Capital only 10% of the net profits, Silverado Capital and Water Street Capital would be splitting the "carry," with Silverado Capital and Water Street Capital each receiving 50% of the "carry"—10% net profits—made on Silverado Capital's advice.

7

25.     In connection with this initially oral agreement, Davis Berg told Mr. Enquist that Water Street Capital was "old-fashioned" and honest and that the company routinely conducts consulting agreements on a handshake basis. Davis Berg reassured Mr. Enquist that he did not need to worry about Water Street Capital upholding the terms of their agreement because Gilchrist Berg was "a man of his word" and "always pays."

26.     On October 30, 2020, on a videoconference with Gilchrist Berg, Davis Berg, and Ian Black, Mr. Enquist shared Silverado Capital's research and analysis of two electric vehicle companies that Silverado Capital suspected were overvalued: WKHS and RIDE.

27.     Shortly after the videoconference, Water Street Capital invested in WHKS and RIDE.

28.     Over the next many months, Silverado Capital continued to provide investment analysis and consulting services regarding WKHS and RIDE. And in turn, Water Street Capital continued to make investment decisions based on Silverado Capital's services. Silverado Capital's services were evidently so valuable to Water Street Capital that the parties discussed the possibility of sharing other short investment opportunities with Water Street Capital as well.

29.     The services provided by Silverado Capital pursuant to the parties' agreement were extensive and ongoing throughout its performance of the

contract. Among other activity, Silverado Capital conducted interviews of former employees at WKHS and RIDE, uncovered evidence of extensive suspicious activity, engaged investigators to examine the activities of each company and travel around the country to investigate key company locations in person, prepared detailed memoranda and reports on each company, and provided ongoing consulting services regarding both stocks. This information was provided to Water Street Capital as part of the parties' contract for Silverado Capital's services.

30.    Silverado Capital's services also included reassuring Water Street Capital of the viability of its investment during inevitable, uncertain periods of the stock prices' rise and fall. For example, in January 2021, the stock price for WHKS and RIDE were "short squeezed." Water Street Capital was concerned this event was jeopardizing its investments and undermined Silverado Capital's services regarding both companies.

31.    Silverado Capital recommended Water Street Capital hold the positions and assured it that the value of WKHS and RIDE stock would inevitably crash.

32.    Silverado Capital was proven correct, and on February 23, 2021, WKHS stock lost nearly 50% of its value. On the same day, Davis Berg messaged Mr. Enquist that Gilchrist Berg "congratulated" Silverado Capital for the WKHS success. He also reiterated that the "deal with [Silverado

Capital] still stands obviously," an obvious reference to the agreed upon 10% of net profits for both WKHS and RIDE. *See* February 23, 2021 Message, attached as **Exhibit A**.

33. In March 2021, RIDE's alleged fraud was publicly exposed by an activist short seller, and RIDE's stock subsequently plummeted as well.

34. Shortly after the RIDE stock crashed, on March 18, 2021, Davis Berg informed Mr. Enquist that Water Street Capital wished to send Silverado Capital a $25,000 "progress payment" towards the total amounts owed under the parties' agreement. *See* March 18, 2021 Message, attached as **Exhibit B**.

35. On March 22, 2021, via Signal message, Davis Berg stated a written consulting agreement with an "NDA" needed to be signed by Silverado Capital before the progress payment would be paid. *See* March 22, 2021 Message, attached as **Exhibit C**.

36. On the same day, Davis Berg sent a written Consulting Agreement to Silverado Capital.

37. The Consulting Agreement provided Water Street Capital was "pleased to confirm our arrangement to engage Silverado Capital as a consultant" regarding the "EV industry." Consulting Agreement, attached as **Exhibit D**. But the Consulting Agreement did not reference any payment terms at all, let alone the parties' longstanding agreement that Silverado Capital receive 10% of the net profits from WKHS and RIDE.

38.     Later that day, via Signal message, Mr. Enquist asked Davis Berg about the missing terms. Davis Berg reassured Mr. Enquist that "GB [Gilchrist Berg] is old school and his word is everything. He always pays people." *See* **Exhibit C**:



39.     On March 24, 2021, just two days after the Consulting Agreement was signed, Mr. Enquist messaged Davis Berg via Signal message again to clarify the longstanding agreement on the payment terms, stating, "Hey, just want to make sure we are on the same page. Our deal is 10% of profits per company, right?" Davis Berg replied, "Yep that's what i said. When/if we have

big profits you'll get paid big." Mr. Enquist responded "Great, just want to make sure we are crystal clear." *See* March 24, 2021 Message, attached as **Exhibit E**:



40.     And if that were not clear enough, Davis Berg then followed up that exchange by stating the terms of the deal himself: "the fact that you get 50% of the carry is more than generous … I don't even get 10% of profits on my ideas." *See* March 24, 2021 Message, attached as **Exhibit F**:



41.    This statement further confirms Davis Berg's understanding on behalf of Water Street Capital—and consistent with his discussions with Mr. Enquist going back to October 2020—that Water Street Capital would pay Silverado Capital 10% of the net profits made on each investment idea. *See* **Exhibit F**.

42.     Silverado Capital's consulting services ultimately proved very lucrative for Water Street Capital. The company has made more than $18 million from the crash of both WKHS and RIDE stock.

43.     With large profits in hand, Water Street Capital was happy with Silverado Capital's performance, and Mr. Enquist was invited to visit Jacksonville and meet with Gilchrist Berg, Davis Berg and others from November 29, 2021 through December 1, 2021.

44.     During Mr. Enquist's visit to Jacksonville, Gilchrist Berg requested Silverado Capital send an invoice for $200,000, so Water Street Capital could make another "progress payment" towards the 10% net profits arrangement.

45.     Thereafter, as requested, Mr. Enquist emailed an invoice to Gilchrist Berg on December 2, 2021, for $200,000. *See* December 2, 2021 Email, attached as **Exhibit G**.

46.     The invoice contained a clause at the top center of the page under the bold title "Investment Consulting Payment." It stated, "Investment Consulting 'progress payment' towards the agreed ten percent of Net Profits (Net Profits= Gross Profits less trading, borrowing costs, and expert network cost, etc) on the two EV [electronic vehicle] positions researched for Water Street Capital by Silverado Capital." *See* December 2, 2021 Invoice, attached as **Exhibit H**:

14



**SILVERADO**
— C A P I T A L —

**Silverado Capital LLC**
Jeff Enquist

Phone: ███████████

# INVOICE

INVOICE # WS0002
DATE: 12/02/2021
DELIVERED VIA EMAIL

TO:
**Water Street Capital**
Attention – Gilchrist Berg/Davis Berg/Lisa Rivers



**INVESTMENT CONSULTING PAYMENT**
Investment Consulting *progress payment* towards agreed ten percent of Net Profits (Net Profits = Gross Profits less trading, borrow costs, and expert network cost, etc) on the two EV positions researched for Water Street Capital by Silverado Capital.

*Progress payment* approved by Gilchrist Berg on 11-30-2021 for = $200,000

Note – All denominations are in $USD unless otherwise noted

| TERMS |
|---|
| Due on Receipt |

| DESCRIPTION | | | TOTAL |
|---|---|---|---|
| Investment Consulting | EV Research Projects | | $200,000 |
| | | SUBTOTAL | $200,000 |
| | | SALES TAX | 0 |

**TOTAL DUE**   **USD $200,000**

47.    In the email attaching the invoice, Mr. Enquist thanked Gilchrist Berg for "offering to pay Silverado the $200k progress payment before [Water Street Capital has] completely closed out the positions." *See* **Exhibit G**.

48.    After sending the invoice that specifically described the payment terms, Mr. Enquist never received a phone call, email, text message or Signal message of any kind from Gilchrist Berg, Davis Berg—who was also copied on

the email attaching the invoice—or anyone else at Water Street Capital disputing the parties' agreement required Water Street Capital to pay Silverado Capital 10% of the net profits.

49.     To the contrary, Gilchrist Berg acknowledged receipt of the invoice and indicated the $200,000 check for the progress payment was in the mail. *See* December 6, 2021 Email, attached as **Exhibit I**. No questions asked.

50.     Davis Berg shortly thereafter invited Mr. Enquist to Jacksonville to attend a training session with Water Street Capital and to brainstorm additional investment ideas beyond WKHS and RIDE.

51.     On January 31, 2022, Gilchrist Berg and Davis Berg had a phone call with Mr. Enquist to give an update on the profits made from both investments; as of December 31, 2021, Water Street Capital stated it had made more than $18 million from the investments in WKHS and RIDE and had made additional profits since the close of 2021.

52.     On the call, Gilchrist Berg committed to making another progress payment for Silverado Capital's consulting services. But for the first time, Gilchrist Berg suggested the final, total compensation should be only 3% of the net profits rather than the agreed 10%.

53.     The call quickly went south when Mr. Enquist reminded Gilchrist Berg and Davis Berg that Water Street Capital committed to pay 10% of net profits from the beginning and reaffirmed the agreement several times.

Gilchrist Berg became enraged, arguing 10% net profits was a bad deal for Water Street Capital.

54.    On February 1, 2022, Silverado Capital received a $125,000 progress payment from Water Street Capital.

55.    On February 7, 2022, Mr. Enquist emailed Gilchrist Berg requesting a call to discuss the compensation issue.

56.    Gilchrist Berg bluntly responded the same day reiterating his belief that Silverado Capital did not "deserve" 10% of the net profits, thus refusing to honor the parties' agreement dating back to October 2020.

57.    Mr. Enquist's multiple follow-up communications attempting to work through the dispute were ignored by Water Street Capital.

58.    On August 18, 2022, Silverado Capital sent a "final invoice" regarding payment based on an estimate of the total profits made on WKHS and RIDE from inception of the parties' agreement through August 2022.

59.    On September 9, 2022, Davis Berg responded "on behalf of Gilchrist Berg," rejecting the invoice. Contrary to numerous oral and written communications with Davis Berg himself, he claimed Water Street Capital "made it very clear" that it never agreed to pay Silverado Capital 10% of the net profits on WKHS and RIDE.

60.    By failing to pay the final invoice, Water Street Capital repudiated the agreement.

61.     Water Street Capital failed to pay and continues to refuse to pay, the remaining amounts owed.

### COUNT I—BREACH OF CONTRACT

62.     Silverado Capital realleges paragraphs 1 through 61.

63.     On October 28, 2020, Silverado Capital and Water Street Capital entered into an oral agreement for Silverado Capital to provide analysis and consulting services to Water Street Capital regarding short-focused investment ideas, specifically WKHS and RIDE.

64.     In exchange, Water Street Capital agreed to pay Silverado Capital 10% of the net profits made on the investments due to Silverado Capital's services.

65.     As described above, numerous oral and written communications demonstrate the parties' agreement to the essential terms of the contract, including Signal messages, text messages, emails, the Consulting Agreement, and Silverado Capital's December 2021 invoice referencing the 10% net profits agreement that was promptly paid without question from Water Street Capital. Thus, the parties have a valid and enforceable contract.

66.     Silverado Capital fully performed under the parties' contract. And Water Street Capital made more than $18 million from WKHS and RIDE because of Silverado Capital's services.

67.    Water Street Capital has breached the contract by refusing to pay the remaining amounts owed to Silverado Capital.

68.    Because of Water Street Capital's breach, Silverado Capital has suffered damages.

Wherefore, Plaintiff Silverado Capital LLC demands judgment against Defendant Water Street Capital, Inc. for damages for breach of contract, including consequential damages, pre-judgment and post-judgment interest, costs and any other relief this Court considers just and appropriate.

### COUNT II—QUANTUM MERUIT

69.    Alternatively, Silverado Capital realleges paragraphs 1 through 61.

70.    Silverado Capital conferred a valuable benefit on Water Street Capital by providing Water Street Capital with investment analysis and consulting services related to WKHS and RIDE.

71.    Water Street Capital agreed to and accepted Silverado Capital's services.

72.    Water Street Capital utilized Silverado Capital's investment analysis and consulting services to strategically invest in WKHS and RIDE. Water Street Capital has made more than $18 million from Silverado Capital's services

73.     A reasonable investment firm, like Water Street Capital, would expect to pay for the investment analysis and consulting services provided by Silverado Capital.

74.     Water Street Capital refuses to pay Silverado Capital the reasonable value of its labor and the market value of the services provided.

75.     Should the Court determine the parties' contract is unenforceable, Silverado Capital is alternatively entitled to recover its damages in *quantum meruit*.

WHEREFORE, Plaintiff Silverado Capital LLC demands judgment against Defendant Water Street Capital, Inc. for damages for quantum meruit in the form of the reasonable value of the services provided, as well as pre-judgment and post-judgment interest, costs and any other relief this Court considers just and appropriate.

### COUNT III—UNJUST ENRICHMENT

76.     Alternatively, Silverado Capital realleges paragraphs 1 through 61.

77.     Silverado Capital conferred a valuable benefit on Water Street Capital by providing investment analysis and consulting services relating to investment in WKHS and RIDE.

78.     Water Street Capital accepted Silverado Capital's investment analysis and consulting services.

79.   Water Street Capital used Silverado Capitals investment analyses and consulting services to strategically invest in WKHS and RIDE.

80.   Water Street Capital has made more than $18 million from Silverado Capital's advice.

81.   As explained in detail above, Water Street Capital acknowledged orally and in writing on multiple occasions that it agreed to pay Silverado Capital 10% of the net profits made from its investments in WKHS and RIDE. But it ultimately refused to honor the parties' well-known and documented agreement.

82.   Should the court find the parties do not have a valid and enforceable contract or that quantum meruit is not an appropriate remedy, it should alternatively find that, under the circumstances, it is inequitable for Water Street Capital to retain the benefit of Silverado Capital's analysis and consulting services without paying Silverado Capital the fair value for the services rendered.

WHEREFORE, Plaintiff Silverado Capital LLC demands judgment against Defendant Water Street Capital, Inc. for unjust enrichment in the form of the reasonable value of the benefit conferred, including pre-judgment and post-judgment interest, costs and any other relief this Court considers just and appropriate.

Dated this 10th day of May, 2023   Respectfully submitted,

/s/ *Lauren V. Purdy*
Lauren V. Purdy
Florida Bar No. 93943
David M. Wells
Florida Bar No. 309291
Justin T. Delise
Florida Bar No. 1039356
**GUNSTER, YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, FL 32202
(904) 350-7168
lpurdy@gunster.com
dwells@gunster.com
jdelise@gunster.com
awinsor@gunster.com
dculmer@gunster.com
krubin@gunster.com

*Counsel for Plaintiff Silverado Capital LLC*