**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SILVERADO CAPITAL LLC,
a California limited liability company,

Plaintiff,

v.                                        Case No.: 3:23-cv-00556

WATER STREET CAPITAL, INC.,
a Florida corporation,

Defendant.

_____/

**DEFENDANT, WATER STREET CAPITAL, INC.'S, ANSWER AND**
**AFFIRMATIVE DEFENSES**

Defendant, Water Street Capital, LLC ("Water Street" or Defendant), hereby

submits its Answer and Affirmative Defenses to Silverado Capital, LLC's

("Silverado" or Plaintiff) Complaint.

**INTRODUCTION**

1.      Water Street admits that it is an investment firm located in Jacksonville,

Florida and that Silverado provided limited consulting services to Water Street

concerning two electric vehicle companies, Workhorse Group and Lordstown

Motors. Water Street otherwise denies the allegations of paragraph 1 of the

Complaint.

2.      Water Street denies the allegations contained in paragraph 2 of the

Complaint.

3.      Water Street admits that Davis Berg told Enquist that Gilchrist Berg is a man of his word. Water Street otherwise denies the remaining allegations of paragraph 3 of the Complaint.

4.      Water Street admits that it offered to pay Silverado a fair amount for its services depending upon a variety of variables and that Silverado surreptitiously included a reference to an agreement that never existed in the invoice that Silverado submitted to Water Street for an advance payment request Silverado made. Water Street denies the remaining allegations contained in paragraph 4 of the Complaint.

5.      Water Street admits that it agreed to pay Silverado a fair amount for its services. Water Street denies the remaining allegations contained in paragraph 5 of the Complaint.

6.      Water Street admits that it has paid Silverado $350,000. Water Street denies the remaining allegations contained in paragraph 6 of the Complaint.

## PARTIES, JURISDICTION, AND VENUE

7.      Water Street admits that Silverado is a limited liability company. Water Street is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint and, therefore, denies such allegations.

8.      Water Street is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 8 of the Complaint and, therefore, denies such allegations.

9.      Water Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint and, therefore, denies such allegations.

10.     Water Street admits that it is incorporated under the laws of the state of Florida and that it maintains its principal place of business in Florida. Water Street further admits that it is a citizen of the state of Florida.

11.     Water Street admits the allegations of paragraph 11 of the Complaint.

12.     Water Street admits the allegations of paragraph 12 of the Complaint for venue purposes only. Water Street denies committing any act or omission giving rise to Silverado's claims.

## BACKGROUND

13.     Water Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and, therefore, denies such allegations.

14.     Water Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint and, therefore, denies such allegations.

15.     Water Street is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 15 of the Complaint and, therefore, denies such allegations.

16.     Water Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint and, therefore, denies such allegations.

17.     The allegations of paragraph 17 of the Complaint are admitted.

18.     The allegations of paragraph 18 of the Complaint are admitted.

19.     Water Street admits that it is a successful and well known private investment firm in the state of Florida and that Gilchrist Berg is the principal officer of Water Street. As the amount of assets under management by Water Street is the subject of a motion to strike, Water Street neither admits nor denies such allegation.

20.     Water Street admits that Davis Berg is a member of the Water Street investment team and the son of Gilchrist Berg. Water Street further admits that Mr. Enquist and Davis Berg had a friendly relationship since 2014. The remaining allegations in paragraph 20 of the Complaint are denied.

21.     Water Street denies the allegations contained in paragraph 21 of the Complaint.

22.     Water Street denies the allegations contained in paragraph 22 of the Complaint.

23.     Water Street denies the allegations contained in paragraph 23 of the

Complaint.

24.     Water Street admits that Davis Berg informed Silverado that its fee on any investment is typically 20% of the profit earned by its clients. Water Street denies the remaining allegations contained in paragraph 24 of the Complaint.

25.     Water Street admits that Davis Berg told Enquist that Water Street is honest and that it routinely conducts consulting agreements on a handshake basis. Water Street further admits that Davis Berg informed Enquist that Gilchrist Berg is a "man of his word." Water Street otherwise denies the allegations of paragraph 25 of the Complaint.

26.     The allegations of paragraph 26 of the Complaint are admitted.

27.     Water Street admits that it invested in a short position in Workhorse Group shortly after the October 30, 2020 videoconference. Water Street otherwise denies the allegations of paragraph 27 of the Complaint.

28.     Water Street admits that Silverado was supposed to provide additional investment ideas to Water Street as part of the consulting services Silverado was to provide. Water Street denies the remaining allegations contained in paragraph 28 of the Complaint.

29.     Water Street denies the allegations contained in paragraph 29 of the Complaint.

30.     Water Street admits that the stock prices for Workhorse Group and

Lordstown Motors were short squeezed in January 2021, and that Water Street was concerned about its investments in Workhorse during that point in time. Water Street denies the remaining allegations contained in paragraph 30 of the Complaint.

31.    The allegations in paragraph 31 of the Complaint are admitted.

32.    Water Street admits that the Workhorse Group stock fell approximately 50% in February 2021. Water Street further admits that Davis Berg messaged Enquist that "my deal with you still stands [sic] obviously[.]" Water Street denies the remaining allegations contained in paragraph 32 of the Complaint.

33.    Water Street admits that Lordstown Motors' stock price fell in February and March 2021. Water Street is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33 of the Complaint and, therefore, denies the allegations.

34.    Water Street admits that in or about March 2021, Davis Berg communicated that Gilchrist Berg had authorized payment of $25,000 for Silverado's services. Water Street further admits that it made payment of $25,000 to Silverado at or about that time. Water Street is without knowledge or information sufficient to determine whether Exhibit B to the Complaint is a duplicate of any communications between Davis Berg and Silverado and therefore denies any such allegations.

35.    Water Street admits that it requested Silverado to sign a consulting

agreement before it made any payments to Silverado. Water Street denies the remaining allegations of paragraph 35 of the Complaint.

36.     Water Street admits that it sent Silverado a proposed consulting agreement on or about March 22, 2021 but otherwise denies the remaining allegations of paragraph 36.

37.     Water Street admits that Exhibit D to the Complaint is a redacted duplicate of the consulting agreement that it sent to Silverado and that Enquist signed on behalf of Silverado. The terms of Exhibit D speak for themselves and Water Street denies the remaining allegations of paragraph 37 of the Complaint.

38.     Water Street admits that Davis Berg informed Silverado that the only person who could bind Water Street, Gilchrist Berg, is a man of his word. Water Street denies the remaining allegations of paragraph 38 of the Complaint.

39.     Water Street denies the allegations contained in paragraph 39 of the Complaint.

40.     Water Street denies the allegations contained in paragraph 40 of the Complaint.

41.     Water Street denies the allegations contained in paragraph 41 of the Complaint.

42.     Water Street denies the allegations contained in paragraph 42 of the Complaint.

43.     Water Street admits that it asked Enquist to come to Jacksonville to meet with Gilchrist Berg, Davis Berg, and others over three days in late 2021. Water Street denies the remaining allegations contained in paragraph 43 of the Complaint.

44.     Water Street admits that it requested that Enquist provide Water Street with an invoice for a payment he requested. Water Street denies the remaining allegations contained in paragraph 44 of the Complaint.

45.     Water Street admits that on or about December 2, 2021, it requested Enquist to send an invoice to Gilchrist Berg for $200,000. Water Street denies the remaining allegations of paragraph 45 of the Complaint.

46.     Water Street admits that the invoice submitted by Enquist to Water Street included a phrase stating that it was a " 'progress payment; towards agreed ten percent of Net Profits . . . on the two EV positions researched for Water Street Capital by Silverado Capital." Water Street denies that this was an accurate statement of the agreement between Water Street and Silverado, and further denies the implication of paragraph 46 that Water Street was aware of the phrase at the time the invoice was paid as Water Street never agreed to such terms, had expressly rejected them, and had not noticed Silverado's slipping it into the invoice. Water Street otherwise denies the remains allegations of paragraph 46 of the Complaint.

47.     Water Street admits that it received the transmittal email set forth as Exhibit G in the Complaint.  Water Street otherwise denies the remaining allegations

of paragraph 47 of the Complaint.

48.   Water Street denies the allegations contained in paragraph 48 of the Complaint.

49.     Water Street admits that Gilchrist Berg acknowledged receipt of the invoice and informed Silverado that payment would be forthcoming. Water Street denies that such acknowledgement extended to the false description of the agreement between Silverado and Water Street that Enquist surreptitiously included in the invoice, and further denies the implication of paragraph 49 that Water Street was aware of the sentence in the invoice submitted by Silverado at the time payment was made. Water Street otherwise denies the remains allegations of paragraph 49 of the Complaint.

50.   Water Street admits that Davis Berg invited Enquist to come to Jacksonville to discuss other potential investment opportunities.  The allegations of paragraph 50 are otherwise denied.

51.   Water Street admits that on or about January 31, 2022, Gilchrist Berg and Davis Berg had a phone conversation with Enquist and discussed the gross profits Water Street's clients made to date on the Workhorse Group and Lordstown Motors positions. The allegations of paragraph 51 are otherwise denied.

52.   Water Street admits that on the call, Gilchrist Berg stated that Water Street would make another payment to Silverado. All other allegations of paragraph

52 are denied.

53.     Water Street admits that during the call, Gilchrist Berg stated to Mr. Enquist that Water Street never agreed to pay to Silverado 10% of its clients' net profits on the two investments.  All other allegations of paragraph 53 are denied.

54.     The allegations of paragraph 54 are admitted.

55.     The allegations of paragraph 55 are admitted.

56.     Water Street admits that Gilchrist Berg stated in an email that 50% of Water Street's profits in the investment after it took 100% of the risk made absolutely no sense, was not fair value for the services, and never would have been agreeable to Water Street. All other allegations of paragraph 56 are denied.

57.     Water Street denies the allegations contained in paragraph 57 of the Complaint.

58.     Water Street admits that Silverado sent a "final invoice" on or about August 18, 2022. All other allegations of paragraph 58 are denied.

59.     Water Street admits that Davis Berg, on behalf of Gilchrist Berg, rejected the invoice and confirmed that the parties had never agreed to such a deal. All other allegations of paragraph 59 are denied.

60.     The allegations of paragraph 60 are denied.

61.     Water Street admits that it refuses to pay any additional amounts to Silverado.  All other allegations of paragraph 61 are denied.

## COUNT I—BREACH OF CONTRACT

62.     Water Street responds to the allegations contained in paragraphs 1 through 61 of the Complaint as fully set forth above.

63.     Water Street admits the allegations contained in paragraph 63 of the Complaint.

64.     Water Street denies the allegations contained in paragraph 64 of the Complaint.

65.     Water Street denies the allegations contained in paragraph 65 of the Complaint.

66.     Water Street denies the allegations contained in paragraph 66 of the Complaint.

67.     Water Street denies the allegations contained in paragraph 67 of the Complaint.

68.     Water Street denies the allegations contained in paragraph 68 of the Complaint.

## COUNT II—QUANTUM MERUIT

69.     Water Street responds to the allegations contained in paragraphs 1 through 61 of the Complaint as fully set forth above.

70.     Water Street denies the allegations contained in paragraph 70 of the Complaint.

71.   Water Street admits the allegations contained in paragraph 71 of the Complaint.

72.   Water Street admits the allegations contained in paragraph 72 of the Complaint.

73.   Water Street admits the allegations contained in paragraph 73 of the Complaint.

74.   Water Street denies the allegations contained in paragraph 74 of the Complaint.

75.   Water Street denies the allegations contained in paragraph 75 of the Complaint.

## COUNT III—UNJUST ENRICHMENT

76.   Water Street responds to the allegations contained in paragraphs 1 through 61 of the Complaint as fully set forth above.

77.   Water Street denies the allegations contained in paragraph 77 of the Complaint.

78.   Water Street denies the allegations contained in paragraph 78 of the Complaint.

79.   Water Street denies the allegations contained in paragraph 79 of the Complaint.

80.   Water Street denies the allegations contained in paragraph 80 of the

Complaint.

81.    Water Street denies the allegations contained in paragraph 81 of the Complaint.

82.    Water Street denies the allegations contained in paragraph 82 of the Complaint.

## GENERNAL DENIAL

83.    Water Street denies all allegations in the Complaint not specifically admitted herein.

## AFFIRMATIVE AND FURTHER DEFENSES

### Allegations Common to the Affirmative Defenses

1.    In October 2020, before Water Street made any investment decisions in Workhorse Group and Lordstown Motors, Silverado's principal, Jeffrey Enquist, represented to Gilchrist Berg and Davis Berg at Water Street, that he was personally "heavily invested" in short positions in both entities.

2.    The value of a short position is directly impacted by how long the short seller must stay at risk (the shorter the better) and how few investors are shorting the position (the fewer the better), both of which principles were known to both Silverado and Water Street when they discussed the possibility of Silverado consulting for Water Street. Unlike a stock put option holder whose downside risk is only the value of the put, a short seller has unlimited downside risk because a short

seller has the obligation to buy the stock back on demand regardless of the price to which it has risen.

3.      As a result, during their initial meeting, Water Street informed Silverado that it expected that neither Silverado nor Enquist would publish any information to the public concerning its analysis in Workhorse Group or Lordstown Motors. Silverado did not then disclose that it intended to publish to the world at large its analysis in Workhorse Group and recommend to the public to short the investment.

4.      Enquist induced Water Street to invest in short positions in Workhorse Group and Lordstown Motors based on his representations that he/Silverado had invested and had put their own capital at risk in the investments and that they would continue to risk their capital along with Water Street. The representation that Enquist had personal risk in the short positions was extremely important to Water Street because Water Street understood the risk that any short seller held.

5.      Within three weeks of Silverado recommending Workhorse Group and Lordstown Motors as short investments, the prices of the two stocks both increased approximately 100%, exposing Water Street to massive losses and indeed, at one point, Water Street was subject to a loss in excess of $7,500,000 in the positions.

6.      At or about the same time, Water Street discovered that the two stocks were among the most shorted investments and that Silverado's analysis was widely

known in the investment community.

7.      As a result of the disastrous performance of the two short investments, it became abundantly clear to Water Street that Silverado had provided it with bad advice concerning the timing of the short position investments in Lordstown Motors and Workhorse Group, causing Water Street to lose confidence in Enquist and Silverado. In this regard, in determining whether to stay in the positions, and potentially be exposed to millions of dollars of additional losses, Water Street felt compelled to use its own resources and conduct its own independent analysis and research, including sending analysts across the country to conduct in-person interviews with people in the industry and potential customers of the companies to analyze whether it was likely that the stock prices in the two companies would eventually fall, as Silverado had represented.

8.      Nevertheless, as had been contemplated and agreed upon the inception of the parties' relationship, Water Street freely shared its non-public and confidential field notes and analysis on the two positions with Silverado in real time. Upon information and belief, Silverado then traded in the positions based on Water Street's independent analysis and research, and Silverado reported that it made substantial profits on such trades.

9.      Water Street ultimately stayed in the investments and eventually made profit on the positions due to its own independent analysis—not based on Silverado's

ideas or analysis. However, Water Street would have made a much larger profit on the investments, had much less exposure associated with the cost of shorting the stocks and its own investigation, and had much less short squeeze exposure, had Water Street invested in the short positions at the right time as opposed to when Silverado recommended that Water Street invest.

10.     During the course of the parties' relationship, Enquist insisted that the parties communicate using the Signal messaging application, which Water Street came to learn automatically deletes messages between its users after a set period of time set by one of the participants in the conversation. Silverado and Enquist represented that they did not want there to be records of their communications because Enquist had been involved in a number of prior *qui tam* legal proceedings and did not want any of his communications with Water Street to be discoverable in any of those lawsuits.

11.     During conversations between the parties, Water Street came to learn that Silverado unilaterally changed the time frame that messages would persist before being automatically deleted by Signal. For example, for certain messages, Enquist set the time for deletion to a few minutes and at other times, set the messages to delete after a week.

12.     Unbeknownst to Water Street, Silverado, acting through Enquist, selectively took pictures or screen captures of messages between the parties and

retained them, despite his representation that he did not want there to be a written record of such communications, but he did not retain all of the communications, and in so doing, has destroyed the ability to put the messages in their proper context of the overall communications being made.

13.     Moreover, Enquist unilaterally manipulated several of the messages, then took screen shots of his fake manipulated messages, making it appear that the parties made communications that in fact never occurred. The most brazen example of which is the purported message embedded at paragraph 39 of the Complaint, and attached as Exhibit E of the Complaint, in which Enquist claims that Davis Berg wrote that Water Street agreed to pay Silverado 10% of the profits. Quite simply, a number of the purported Signal messages that Silverado has attached to the Complaint are inauthentic digital forgeries.

14.     Following Water Street's investment in Workhorse Group and Lordstown Motors, and at a time when the short positions were losing money, Enquist reduced his short position in the stocks without advising Water Street to do the same, thereby leaving Water Street exposed to unlimited short squeeze risk while Enquist and Silverado were de-risked but still had an upside claim to compensation from Water Street if the stocks went down in value.

15.     Although Silverado was purporting to act as a consultant and investment advisor to Water Street, and Water Street relied on Silverado for analysis,

advice, and updates on the positions, Silverado did not provide any notice to Water Street that it was reducing its investment in the positions or advising Water Street that it should reduce its investment in the short positions. Again, Water Street never would have shorted those positions had Enquist not affirmatively represented that he was personally heavily invested and at risk in short positions in both equities.

16.    After Water Street invested in short positions in Workhorse Group and Lordstown Motors based on Enquist and Silverado's recommendation, Silverado published its analysis concerning Workhorse Group on a publicly available website and on a Twitter account, despite Water Street's request that he not do so. In publishing its analysis, Silverado gave to the public at large for free the very information for which it now seeks more money from Water Street and drew more attention to the short investment, creating substantial additional short squeeze risk to Water Street in the investments.

17.    Silverado's actions in reducing its short positions and publicizing its analysis of the investments increased Water Street's risk in its investments and caused Water Street to be exposed to significant financial losses.

18.    At the time that Water Street agreed to use Silverado for consulting services, Silverado represented that it would be providing a variety of recommendations on a variety of different companies. Ultimately, Silverado failed to provide any additional recommendations or providing any consulting services on

any potential transactions other than the short positions in Workhorse Group and Lordstown Motors that are at issue in this case.

### First Affirmative Defense

Silverado, through its principal, Jeffrey Enquist, fraudulently induced Water Street to enter into an agreement with him. More specifically, Enquist represented to Water Street that Silverado had performed a unique analysis from publicly available information in two short positions in which it was also invested and that it would continue to hold large short positions in them. Silverado made these representations with the knowledge that its analysis was widely known and that it would reduce its investment and, therefore, its risk, upon Water Street investing in the short positions. Silverado made these misrepresentations with the intent to induce Water Street into entering a business relationship with him and Water Street relied on such representations in entering into such relationship.

### Second Affirmative Defense

Silverado, through its principal, Jeffrey Enquist, committed fraud on Water Street. Enquist represented to Water Street that Silverado would continue to hold large short positions in the two investments. Silverado made these representations with the knowledge that it would reduce its investment and, therefore, its risk, upon Water Street investing in the short positions. Silverado made these representations with the intent to induce Water Street into investing in the two positions with the

expectation that Silverado would retain the upside benefit of the investments (through its agreement with Water Street) while shedding the unlimited downside risk of the short positions. Water Street relied on these representations in investing in the short positions, which resulted in Silverado profiting at Water Street's expense.

### Third Affirmative Defense

Silverado's claims against Water Street are barred in whole or in part by Silverado's fraud upon the Court/spoliation of evidence. Silverado insisted that the parties communicate through the Signal messaging application. Despite claiming that it did not want any communications to be discoverable in litigation, Silverado falsified the actual messaging between the parties with respect to the agreed upon compensation that Silverado would receive in the event one or both of the recommended investments were profitable. Silverado then purports to have taken screen shots of the actual messages between the parties and has attached to its Complaint in this matter duplicates of such messages. Upon information and belief, native copies of the actual messages, which would conclusively demonstrate that the parties never agreed that Water Street would pay to Silverado 50% of its profits from the investments at issue, are not available.  As such, Silverado's claims in this proceeding should be barred in whole or in part due to its fraud on the Court and

spoliation of evidence.

## Fourth Affirmative Defense

Plaintiff's claims against Water Street for breach of an oral contract are due to be dismissed because the person who Silverado alleges entered into such contract on its behalf, Davis Berg, did not have actual or apparent authority to bind Water Street to such an agreement and Enquist had actual knowledge that only Gilchrist Berg could bind Water Street to any compensation agreement. Further, Water Street did not make any representations to Silverado or the world at large to indicate that Davis Berg had any such authority. Accordingly, Davis Berg could not bind Water Street to the alleged oral contract.

## Fifth Affirmative Defense

At all times material hereto, Silverado and Water Street agreed that Silverado's compensation, if any, would be at the sole discretion of Water Street based on all circumstances relating to the investments. Water Street determined that $350,000 was fair compensation based upon all of the facts and circumstances known to it at the time and, in fact, Water Street paid Silverado $350,000 for its services consistent with the terms of the parties' agreement. As such, Water Street has fully paid to Silverado all amounts due under the parties' agreement.

## Sixth Affirmative Defense

Although Water Street expressly denies that it ever agreed to pay Silverado

any amount tied to the profits or fees that it realized in the two investment positions recommended by Silverado other than in the context of an offer to compromise, Water Street has in fact paid Silverado a fee substantially equal to ten percent of the fee that Water Street received for its clients' profits, i.e., Water Street's profits, in the Workhorse Group and Lordstown Motors short investments effectuating payment in full if such an agreement existed.

### Seventh Affirmative Defense

Water Street provided additional benefit to Silverado by sharing its independent research, analysis, and field notes in the Lordstown Motors and Workhorse Group positions with Silverado in real time, on which Silverado profited or should have profited. Those benefits Silverado received should be considered in any analysis of Plaintiff's quantum meruit and unjust enrichment claims.

### PRAYER FOR RELIEF

Defendant, Water Street Capital, Inc., respectfully requests that the Court enter judgment in its favor and against Plaintiff, Silverado Capital, LLC, on all claims for relief asserted in the Complaint, and award such further relief to Water Street Capital, Inc., as the Court deems necessary.

Dated: June 15, 2023

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Richard D. Rivera*
Steven E. Brust

Florida Bar No.: 0892091
Email: sebrust@sgrlaw.com
Alan S. Wachs
Florida Bar No.: 980160
Email: awachs@sgrlaw.com
Richard D. Rivera
Florida Bar No.: 0108251
Email: rrivera@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6100
Fax: (904) 598-6300

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2023, the foregoing document was filed with

the Clerk of Court using the CM/ECF system, which will send a notice of electronic

filing to the following counsel of record:

David M. Wells
dwells@gunster.com
Lauren Vickroy Purdy
lpurdy@gunster.com
Justin Delise
jdelise@gunster.com
Gunster, Yoakley & Stewart, PA
225 Water Street, Suite 1750
Jacksonville, Florida 32202

*Richard D. Rivera*
Attorney
